EMIL J. PATTBERG, petitioner,

*v.*

CHARLOTTE PATTBERG, defendant.

[Submitted April 18th, 1923. Decided April 20th, 1923.]

1. A husband who lives with his wife and is guilty of no matrimonial offence, has almost unbounded discretion as to the manner and style in which they shall live.

2. A husband must support his family according to his station in life, but while he remains a member of and the head of the family partnership, a wide latitude of discretion must be allowed him as to how much of his income it is advisable to spend, and how much should be retained for the purpose of establishing a competence for the future, and is entitled to a large extent to dictate the manner in which the money shall be spent.

3. A husband who has deserted his wife and children cannot dictate the manner in which the money which he contributes to the support of his family shall be spent, and the stores at which his wife is to make purchases by extending credit in such stores only, but must pay the wife in cash the amount to be expended for the support of herself and the children.

4. Where a husband deserted his wife and two children, the court, in the wife's suit for separate maintenance, was not required to limit the wife's allowance to one-third of the husband's income, and where his income was $4,200 a year, an allowance of $50 a week for the support of the wife and two children, ten and thirteen years of age, is proper.

On petition for divorce.

*Mr. Julius Lichtenstein,* for the petitioner.

*Mr. Alexander Simpson,* for the defendant.

BENTLEY, V. C.

This is a suit for divorce by the husband, with a counter-claim by the wife, who will be referred to as the defendant, both on the ground of desertion. The petition has been withdrawn without prejudice, and the counter-claim has been so amended as to make this practically a suit for separate maintenance under the twenty-sixth section of the Divorce act.

The parties lived together in comparative happiness until about 1915, when trouble arose which, according to the evidence, was over money matters. At that time and for some years afterwards the petitioner was allowing the defendant $100 a month for the table and pin-money, he paying all the other expenses of the home, such as rent, light, fuel and clothing. The wife had charge accounts in two of the New York department stores, and apparently never abused her husband's credit or was accused of such abuse until upon one occasion she purchased a bill of goods amounting to something over $300, which caused him to close the accounts; and matters going from bad to worse, the husband, in October, 1921, following a quarrel over the cooking of his meals,

left the home in which he had been living with his wife and two children, and went to live with his mother, where he has remained ever since.

The arrangement under which he has provided for his family is that he has pledged his credit at three stores from which his wife can buy food in such quantities as she sees fit. In addition to that he purchases all the clothing for his children, but not for his wife, and pays all of the necessary expenses such as rent, fuel and light. He then pays to his wife $40 a month, out of which she is obliged to clothe herself, pay small incidental expenses such as laundry and toilet articles and find her pin-money.

He testified that his annual income amounts to $4,200 and that he annually expends upon the items mentioned slightly upwards of $5,000 a year, so that it has been necessary for him to borrow the excess over his salary to support his family under this mode, whereby he has run considerable into debt. He also testified that he lives with his mother free of charge and has practically no expenses other than for his clothing, to defray which it is also necessary for him to use borrowed money. Startling as this testimony is I feel it unnecessary to express any opinion as to the credence to be given it, for the reason that under all the testimony in the case it is agreed upon all hands that he has been spending more money upon his wife and children than this court would compel him to. The single question involved relates to his right to support his wife in this fashion rather than to give her a regular allowance to meet the expenses of her household.

It will have been observed that the husband has deserted his wife, that is, he has separated himself from her without any justifiable cause. While he remained with her and was guilty of no matrimonial offence, his discretion was almost unbounded as to the manner and style in which they should live. While it is true that a husband must support his family according to his station in life, it is also true that while he remains a member of the family partnership and the head thereof a wide latitude of discretion must be allowed him as to how much of his income it is advisable to spend and how

much should be retained for the purpose of establishing a competence for the future. Furthermore, he is entitled to a large extent to dictate the manner in which such money shall be spent; but when he separates himself from his wife in a case like the present one, without any justifiable cause, he becomes a wrong-doer, and I do not understand that he can wrong his wife and then continue to exercise the same degree of control over her that is vested in an innocent husband who is living with his family and seeking to do the best for them. Otherwise, a dissatisfied husband, with the bitter animosity that is such an unfortunate concomitant of matrimonial causes, would have it then within his power to make the life of an innocent wife intolerable. If he can direct that she must procure her groceries from one and only one grocery store, it is clear that he could pick out one where it would be most distasteful for his wife to trade or where it might be impossible to secure the sort of food to which she is entitled. Even more so would that be the case in the selection of a butcher.

But upon broader grounds, if she is left alone to lead her own life the policy of the law has always been to compel him to provide her not with goods or credit, but with cash, so that as long as she behaves herself as a virtuous woman should she may lead her own life, make her purchases where she pleases, and effect all possible economies so as to save some of her allowance. Clearly, the present system described above is destructive of all idea of economy, and the wife in this case has said that she can live better upon half of the amount that the husband is now spending for the support of her and their children if paid to her in cash.

It is argued very earnestly that the allowance to the wife should be for not more than one-third of the husband's admitted income of $4,200 a year. To this I cannot agree. She has the custody of the two children of the marriage who, as I recall it, are approximately ten and thirteen years of age. The expense of their support is becoming a considerable item and will continually increase. It seems to me that the husband cannot expect his wife to pay all the expenses for

*94 N. J. Eq.*          Pattberg *v.* Pattberg.

herself and these children out of an amount only $200 in excess of what it cost for food alone when the family were united. I do not understand that there is any hard and fast rule restricting the allowance in a case where there are children to be cared for, limiting the allowance that will be made to one-quarter or one-third of the husband's income.

I will advise a decree allowing the wife the sum of $50 a week and a counsel fee, which I will fix upon notice, if counsel are not able to agree as to the amount.